UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Flagstar Bank, FSB,<br>  *Plaintiff*,<br><br>  *v.*<br><br>Ticor Title Insurance Company and Richard Laschever,<br>  *Defendants*. | Civil No. 3:07cv1305(JBA)<br><br><br><br>September 18, 2009 |

RULING ON TICOR'S MOTION FOR SUMMARY JUDGMENT [Doc. # 52]

  This lawsuit arises from the rejection by Defendant Ticor Title Insurance Company ("Ticor") of a claim by Plaintiff Flagstar Bank, FSB ("Flagstar") under a title insurance policy purportedly issued by Ticor and assigned to Flagstar (the "Title Policy"). The Title Policy purported to cover a mortgage loan that Flagstar, a federally-chartered savings bank, purchased during the refinancing boom. Flagstar, believing the mortgage loan to be insured by Ticor, bought the mortgage loan, which subsequently went into default. The loan closing had been fabricated, however, and the Ticor Title Policy insuring the loan, along with the signature of Ticor issuing agent Richard Laschever, was forged.

  In its Amended Complaint, Flagstar claims that Ticor breached its contractual obligations when it rejected Flagstar's coverage claim. Flagstar also alleges that Ticor was negligent in failing to train, monitor, and audit its issuing agents to prevent Ticor forms from being accessed and misused by third parties. In addition, Flagstar asserts two counts of negligence against Laschever. Following discovery, Ticor moved for summary judgment

as to the two claims against it, which will be granted for the reasons stated below. Laschever, proceeding *pro se*, did not move for summary judgment.

I.     Background

The summary-judgment record reveals the following facts. In 2003, Ticor recruited Laschever to be a title agent through its "fast-track" system. At the time, Laschever was a settlement agent for Matrix Investment Corporation ("Matrix") with close business ties with Matrix and an office within Matrix's place of business. The details of his relationship with Matrix, however, were not disclosed to the Ticor employees who approved Laschever as an agent for Ticor.

Matrix, a non-depository mortgage lender, was one of Flagstar's correspondent lenders. In late 2004, Matrix submitted an application to Flagstar for approval of a loan to Matrix CEO Gary Johnson for the purpose of paying off existing mortgages on his property as well as credit card debt (the "Johnson Loan"). As an at-closing condition, Flagstar required title insurance, but understood at that time that final title documents would be received after the closing.

A purported closing of the Johnson Loan occurred on October 8, 2004, after which Johnson's daughter assigned the mortgage note to Flagstar on behalf of Matrix, and Flagstar wired funds from Matrix's warehouse line of credit into an account it believed to be in Laschever's name. On October 29, 2004, Flagstar received a closing packet from Matrix that included a set of documents purporting to be a short-form loan policy (the "Title Policy"),

which consisted of a "Schedule A" and a "Schedule B," and appearing to be signed by Laschever as "AUTHORIZED OFFICER OR AGENT." Laschever never signed the Title Policy documents, however, and he was not involved in the refinancing transaction. Moreover, the schedules attached to the Title Policy are deficient or incomplete in certain respects. Schedule A lacks a file number and policy date and lists the incorrect town for both the property address and the land records office. Schedule B's Notice of Availability of Owner's Title Insurance contains no date, lists the incorrect town for the property address, and contains blanks in the spaces designated for notation of the cost and amount of title insurance purchased. In addition, each Schedule states at the bottom of each page that "[t]his Policy is invalid unless the cover sheet and Schedule B are attached." The "cover sheet" to which the schedules refer is a four-page boilerplate document created by Ticor, entitled "Policy of Title Insurance," that contains the only expression of the terms under which Ticor would insure a title. It provides a signature line for an "Authorized Signatory"; lists 24 covered reasons for the "loss or damage . . . sustained or incurred by the Insured" against which Ticor states it "insures"; lists nine "EXCLUSIONS FROM COVERAGE"; and contains 16 "CONDITIONS AND STIPULATIONS," including, *inter alia*, a "DEFINITION OF TERMS," the manner in which claims were to be filed with Ticor and the "DUTY OF INSURED CLAIMANT TO COOPERATE" with any defense provided by Ticor, and the "DETERMINATION AND EXTENT OF LIABILITY." The "cover sheet" also states that "[t]his Policy together with all endorsements,

if any, attached hereto by [Ticor] is the entire policy and contract between the Insured and [Ticor]." Flagstar never received any such "cover sheet."

Flagstar funded the purchase of the Johnson Loan on November 10, 2004. Nearly a year later, in September 2005, Johnson defaulted on the loan payments and Flagstar presented its claim for coverage of its losses to Ticor under the Title Policy. Ticor rejected Flagstar's claim on September 12, 2006.

In August of 2007, Flagstar commenced this action against Ticor and Laschever. In its original four-count complaint, Flagstar alleged that: (1) Ticor breached the title-insurance contract in failing to pay Flagstar's loss claim; (2) Laschever was negligent at closing in failing to pay off the existing mortgages and record the deed; (3) Ticor breached the contract through its agency relationship with Laschever; and (4) Laschever was negligent in failing to protect his bank account and Ticor files and policy forms from improper third-party access. In January 2008, Flagstar amended the second breach-of-contract claim against Ticor (Count 3) to allege that Ticor was negligent in failing to train and audit its title agents to protect its "files, forms, records, papers and bank accounts from access by third parties."

4

II.     Discussion

Ticor moves for summary judgment[1] on two grounds.  First, Ticor argues that the breach-of-contract claim must fail as a matter of law because the putative title insurance contract was the product of fraud and because it contains insufficiently definite terms. Second, Ticor contends that the amended negligence claim is untimely because it was brought outside the applicable statute of limitations and does not relate back to the date of service of Flagstar's original complaint under Federal Rule of Civil Procedure 15(c).

A.     Count One: Breach of Contract

Flagstar asserts that Ticor breached its contractual obligations in denying Flagstar's claim for coverage under the Title Policy and failing to pay for Flagstar's loss.  "An assignee stands in the shoes of the assignor," and as Matrix's assignee, Flagstar had "no greater rights or immunities than [Matrix] would have had if there had been no assignment."  *Shoreline Commc'ns, Inc. v. Norwich Taxi, LLC*, 797 A.2d 1165, 1172 (Conn. App. Ct. 2002) (internal quotations omitted).  The existence of a valid insurance policy contractually obligating Ticor to provide coverage to Flagstar therefore depends on whether the policy documents created a contract between Ticor and Matrix.

---

[1] Under the familiar summary judgment standard, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

To assert a claim for breach of contract, Flagstar must show "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Whitaker v. Taylor*, 916 A.2d 834, 841 (Conn. App. Ct. 2007) (internal quotations omitted). Ticor argues that based on undisputed facts, Flagstar cannot prove that a valid contract was formed between Ticor and Matrix. The Court agrees.

### 1. Fraud

Most damaging to Flagstar's case is Connecticut's well-formulated principle that "[f]raud vitiates all contracts, written or otherwise." *Martinez v. Zovich*, 867 A.2d 149, 156 (Conn. App. Ct. 2005) (internal quotation marks omitted). Flagstar acknowledges in its own pleadings that "[w]ithout Flagstar or Laschever's knowledge, Matrix's employees and/or agents seized blank Ticor policies and issued, in the name of Laschever as Ticor's agent, a Ticor title insurance policy on the Subject Property." (Am. Compl. [Doc. # 26] at Count Three at ¶ 22.) In addition, both in its summary judgment briefing and at oral argument, Flagstar concedes that Laschever's signature on the Title Policy was forged. Therefore, even if the Title Policy otherwise appeared enforceable, the fraudulent signature would vitiate any contract thus formed.

### 2. Definite and Certain Terms

Flagstar argues in its opposition memorandum that even if fraudulent, the Title Policy "was nonetheless a 'clear, unambiguous express[ion] of the terms under which [Ticor was] willing to enter into a contract.'" (Pl.'s Opp'n [Doc. # 53] at 18 (quoting *Auto Glass*

*Express, Inc. v. Hanover Ins. Co.*, No. X07-CV-034029537S, 2007 WL 3380190, *2 (Conn. Super. Ct. Oct. 26, 2007)).) While the case to which Flagstar cites is no longer good law, the legal principle on which that case had relied remains valid: a contract may be formed by "performance" rather than "by reciprocal promise" if the offer "invite[s] acceptance, not by a reciprocal promise by the [offeree], but by the[] [offeree's] performance" and "clearly and unambiguously set[s] forth the performance sought by the [offeror]." *Auto Glass Express, Inc. v. Hanover Ins. Co.*, 975 A.2d 1266, 1272–73 (Conn. 2009).[2] This proposition follows from the "well settled" "rule[] governing contract formation" that "an offeror is the master of his offer, and therefore, is not obligated to make an offer on any terms except his own." *Id.* (internal quotations omitted). However, Flagstar does not point to any portion or language of the Title Policy that it believes clearly and unambiguously manifests either Ticor's intent to invite acceptance by performance rather than by reciprocal promise, or what performance Ticor invited. The Court can find no such language. Therefore, no contract was formed by Matrix's or Flagstar's performance of any sort under the Title Policy.

---

[2] In *Auto Glass Express* the Superior Court considered a challenge by auto glass companies to the pricing standards set forth in letters sent by an insurer to glass repair companies stating what prices the insurer would pay for repairs to its insureds' damaged automobile glass. The Superior Court held that the pricing letters constituted offers that "invited acceptance, not by a reciprocal promise by the plaintiffs, but by their performance." 2007 WL 3380190 at *2. The Connecticut Supreme Court reversed, holding instead that the pricing letters were not contract offers that invited acceptance by performance because they did not "clearly and unambiguously set forth the performance sought by the [insurer]." *Auto Glass Express*, 975 A.2d at 1273.

In addition, no enforceable contract exists if "there [i]s no meeting of the minds." *Amica Mut. Ins. Co. v. Welch Enters., Inc.*, 970 A.2d 730, 732 (Conn. App. 2009). Thus, "[u]nder established principles of contract law, an agreement must be definite and certain as to its terms and requirements. The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Perricone v. Perricone*, 972 A.2d 666, 689–90 (Conn. 2009).

For the reasons stated above, Laschever's fraud vitiates any contract between Flagstar and Ticor or between Ticor and Matrix that was later assigned to Flagstar, but even assuming *arguendo* that no fraud exists, the record evidence reveals no "reasonably certain" terms that indicate the existence of an enforceable contract between Ticor and Matrix or between Ticor and Flagstar. The record reveals both that Schedule A, which comprised part of the Title Policy at the time of the Johnson Loan, expressly stated that "[t]his Policy is invalid unless the cover sheet and Schedule B are attached," and that no "cover sheet" was attached to Flagstar's Title Policy, which contained only Schedules A and B.[3] The language of the validity requirement thus unambiguously indicates that no contract was formed because under its terms, the missing cover sheet meant the "Policy [wa]s invalid."

---

[3] At the time Schedules A and B, on which Flagstar relies for its breach-of-contract claim, were issued, Ticor's policy-generating software did not yet include cover sheets along with the schedules. (Kroll Dep., Ex. V to Def.'s Rule 56(a)1 Stmt. [Doc # 52-2], at 67:2–4.) A cover sheet would have served as a comprehensive policy jacket with "terms and conditions and exclusions which are necessary to create a policy of title insurance." (Weisbecker Aff., Ex. B to Def.'s Rule 56(a)1 Stmt., at ¶ 6 and Ex. 2.)

Furthermore, without the cover sheet to provide the terms of coverage, exclusions, stipulations, and definitions, the documents do not otherwise provide terms detailing Ticor's obligations under any purported contract, much less the "reasonably certain" terms necessary to permit enforceability. Because Flagstar lacks evidence that any valid and enforceable contract was formed, there can be no breach from which Flagstar could have suffered any damages. Summary judgment is therefore granted to Ticor on this claim.

### B.     Count Three: Negligence

Connecticut's general tort statute of limitations provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577. The statute's language "precludes any construction . . . delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." *Fichera v. Mine Hill Corp.*, 541 A.2d 472, 476 (Conn. 1988); *see also Stuart & Sons, L.P. v. Curtis Pub. Co.*, 456 F. Supp. 2d 336, 343 (D. Conn. 2006) (same).

As Flagstar acknowledges, its negligence claim survives summary judgment only if it relates back to Flagstar's original complaint because the Amended Complaint alleging the negligence claim was filed more than three years after the conduct complained of. (*See* Pl.'s Opp'n at 1.) Ticor argues that Flagstar's amended negligence claim is not saved by the relation-back doctrine because there is no common core of operative facts with its original complaint, which concerned the loan closing and the policy, not the broader "antecedent

dealings" between Ticor and Laschever or Ticor's business practices. (Def.'s Mem. Supp. [Doc. # 52-1] at 5, 8.) Flagstar responds that the negligence claim against Ticor's agent, Laschever, in its original complaint setting out the process of approving Laschever as an agent "should have made Ticor fully aware that it could be the subject of a[n] action for its own negligence for failing to train, monitor, and audit Laschever." (Pl.'s Opp'n at 14–16.)

"An amendment to a pleading relates back to the date of the original pleading when[] . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," Fed. R. Civ. P. 15(c)(1)(B),[4] such as when "the later pleading merely clarifie[s] or expand[s] upon the basic factual allegations of the original or simply alter[s] a legal theory," *McCarthy v. Associated Clearing Bureau, Inc.*, No. 3:97cv1969(RNC), 1999 WL 1995185, at *5 (D. Conn. Sept. 3, 1999), but not when "it asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading," *Mayle v. Felix*, 545 U.S. 644, 645 (2005). "[T]he test is not simply whether the events giving rise to the different complaints occurred at about the same time." *McCarthy*, 1999 WL 1995185, at *1, *5–*6 (finding no relation back even though the complaints involved the same parties and the same letter because the original claim focused on contracts while the amended complaint relied on

---

[4] The parties cite to both Connecticut and federal law. Rule 15 of the Federal Rules of Civil Procedure, not state law, controls whether Flagstar's amended negligence claim relates back. *Hanna v. Plumer*, 380 U.S. 460, 471 (1965) ("When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court has been instructed to apply the Federal Rule[.]").

defendants' relationships with each other and their involvement in debt collection); *see also Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir. 1973) ("the test is not contemporaneity"). Instead, "[f]or a newly added action to relate back, the basic claim must have arisen out of the conduct set forth in the original pleading." *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotations omitted). The "central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Id.* (internal quotations omitted); *see also Jones v. Bernanke*, 557 F.3d 670, 674–75 (D.C. Cir. 2009) ("even an amendment that shares some elements and some facts in common with the original claim does not relate back if its effect is to fault [the defendants] for conduct different from that identified in the original complaint") (internal quotations omitted).

Here, Ticor's negligence in training and auditing its agents, as alleged in Flagstar's amended complaint, is not "the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" because the only conduct for which Ticor is faulted in the original complaint is its breach of "its obligations under the Title Policy . . . to make payment for the loss of money or other property on Flagstar's claims submitted under the [Title] Policy" (Orig. Compl. [Doc. # 1] at ¶ 20; *see also id.* at Count Three at ¶ 19 (same)). Because the originally-pleaded factual matters regarding negligence centered on Laschever's alleged duty and conduct rather than Ticor's, the "fact situation" pleaded in the original

complaint regarding Laschever's negligence did not give Ticor adequate notice of any claim Flagstar might raise for Ticor's own negligence

Flagstar fares no better by relying on its assertion in the original complaint of an alternative breach-of-contract claim against Ticor through its agency relationship with Laschever. Again, in that claim Flagstar alleged negligence only by Laschever—"Laschever failed to safeguard from Matrix's employees and/or agents the files, records, and papers in his office, which was located at the same address as Matrix" (*id.* at Count Three at ¶ 8)—and an agency relationship between Ticor and Laschever (*e.g.*, *id.* at Count Two at ¶ 22 and at Count Three at ¶ 9). By contrast, the amended negligence claim, which wholly replaces the original alternative breach-of-contract claim, asserts certain allegedly wrongful conduct by Ticor:

> Ticor breached its duties to Flagstar by failing to properly train and manage its agents, including Laschever, regarding the following:
>> a. The establishment and utilization of clients' funds and bank accounts for mortgage refinance transactions;
>> b. The establishment [and] protection of files, forms, records, papers and bank accounts from access by third parties; and
>> c. The issuance of title commitments.

(Am. Compl. at Count Three at ¶ 26.)

This amended negligence claim does far more than simply elaborate on factual allegations existing in the original complaint. Claims of Laschever's negligence in "safeguard[ing]" his office, even as Ticor's agent, was insufficient to give Ticor adequate notice of Flagstar's later claim that Ticor breached a duty of care to protect its files or train

12

and audit its agents in the ways alleged.[5] In sum, Flagstar's negligence claim against Ticor does not relate back to the original complaint because Ticor's alleged negligence is predicated on a different set of facts—that is, *Ticor's* conduct and duties—from those underpinning Ticor's potential liability for its agent's negligence, which is predicated on *Laschever's* conduct and duties and Ticor's principal-agent relationship with Laschever.

Flagstar's allegations in its amended complaint regarding Ticor's negligence do not relate back to its allegations in its original complaint. Therefore, Flagstar's negligence claim against Ticor is barred by Conn. Gen. Stat. § 52-577, and summary judgment must be granted to Ticor on this claim as well.

III.   Conclusion

For the reasons stated above, Defendant Ticor's Motion for Summary Judgment [Doc. # 52] is GRANTED. The Clerk is directed to terminate Ticor as a party to this case. The only claims remaining for trial are those asserted against Laschever.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of September, 2009.

---

[5] Flagstar seems to suggest a theory of vicarious liability in opposing summary judgment, arguing that "[a]s Laschever's principal, Ticor is responsible for Leschever's negligent acts and omissions with regard to his position as a Ticor agent." (Pl.'s Opp'n at 13), but Flagstar did not plead vicarious liability in either its original or amended complaint.